UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 06-176-GWU


JACQULINE LEWIS,                                                                    PLAINTIFF,


VS.                           **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                            DEFENDANT.


**INTRODUCTION**

Jacquline Lewis brought this action to obtain judicial review of an unfavorable

administrative decision on her application for Supplemental Security Income.  The

case is before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.      Is the claimant currently engaged in substantial gainful activity?
        If so, the claimant is not disabled and the claim is denied.

2.      If the claimant is not currently engaged in substantial gainful
        activity, does he have any "severe" impairment or combination
        of impairments--i.e., any impairments significantly limiting his
        physical or mental ability to do basic work activities?  If not, a
        finding of non-disability is made and the claim is denied.

3.      The third step requires the Commissioner to determine
        whether the claimant's severe impairment(s) or combination of
        impairments meets or equals in severity an impairment listed

1

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

and must take into account whatever in the record fairly detracts from its weight.

Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Jacquline Lewis, a 47-year-old former teacher's aide, cashier, waitress and drug store assistant manager with a high school education, suffered from impairments related to back and neck pain secondary to mild lumbar disc disease, an adjustment disorder with depressed mood and a pain disorder associated with both psychological factors and her general medical condition.  (Tr. 281, 290).  Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of medium level work.  (Tr. 287, 290).  Since the claimant could return to her past relevant work as a teacher's aide and cashier, she could not be considered totally disabled.  (Tr. 290, 292).  As an alternative, the ALJ also found that a significant number of other jobs remained available to the plaintiff.  (Tr. 290-291).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

In determining that Lewis could return to her past relevant work , the ALJ relied heavily upon the testimony of Vocational Expert Jackie Rogers.   The hypothetical question presented by the ALJ included an exertional limitation to medium level work, restricted from a full range by such non-exertional restrictions as (1) an inability to ever climb ladders, ropes or scaffolds, balance, stoop, kneel, crouch or crawl; (2) a limited ability to lift and reach overhead; (3) a need to avoid hyper-extension of the neck/cervical area; (4) a "good or more than satisfactory" ability in such areas as following work rules, using judgment, functioning independently, handling detailed and simple job instructions, behaving in an emotionally stable manner and demonstrating reliability;  (5) a "fair or satisfactory" ability in relating to co-workers, dealing with the public, interacting with supervisors, maintaining attention and concentration, handling complex job instructions and relating predictably in social situations; and (6) a "poor or limited but not precluded" ability to deal with work stresses.  (Tr. 592).  In response, Rogers testified that the past jobs of cashier and teacher's aide could still be performed.  (Tr. 593).  The witness also identified a significant number of jobs in the national economy which could still be performed.  (Tr. 593-594).  Therefore, assuming that the vocational factors considered by the expert fairly characterized the condition of Lewis, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error.  Dr. Mark Burns examined Lewis in November of 2007 and noted that her physical examination was within normal limits. (Tr. 505).  Orthopedic examination revealed only a slight decrease in abduction and flexion of the right shoulder but was otherwise normal.  (Id.).  Dr. Burns indicated that the claimant would not be limited by either neurologic or functional abnormality. (Id.).  The physician opined that the plaintiff would have no restriction with regard to sitting, standing, moving about, lifting, carrying, handling objects, hearing, seeing, speaking and traveling.  (Id.).  Dr. Burns made similar findings when he had previously examined Lewis in December of 2004.  (Tr. 228-234).  The ALJ's findings were consistent with this opinion.

The record was reviewed by Dr. David Swan in November of 2004, Dr. Timothy Gregg in April of 2005 and Dr. Robert Brown in June of 2006.  Dr. Swan and Dr. Gregg each opined that the physical problems of Lewis were "less than severe."  (Tr. 206, 254).  Dr. Brown limited the plaintiff to medium level work restricted from a full range by an inability to more than occasionally stoop.  (Tr. 437-445).  The ALJ's findings were compatible with these opinions.

More severe physical restrictions than those found by the ALJ were not reported by such treating and examining sources as the staff at Appalachian Regional Healthcare (Tr. 113-137, 143-176, 498-502), Dr. Faye Whiting (Tr. 138-

142), Dr. Thomas Watkins (Tr. 205), Dr. Denes Martonffy (Tr. 235-253), the staff at the Dr. Anne Wasson Rural Health Center (Tr. 405-415), Dr. Brett Scott (Tr. 416-424), and the staff at the Cutshin Clinic (Tr. 425-428).  These reports provide additional support for the administrative decision.

Dr. George Chaney, a treating source, diagnosed cervical and lumbar disc disease with cervical syrinx in September of 2004.  (Tr. 178).  Dr. Chaney opined that Lewis would be limited to light level work, restricted from a full range by (1) an ability to stand or walk for less than six hours a day in less than one hour intervals; (2)  an ability to sit for less than six hours a day in less than one hour intervals; (3) an inability to more than occasionally climb, balance, stoop, crouch, kneel or crawl; (4) a limited ability to push and pull; and (5) a need to avoid exposure to heights, moving machinery, temperature extremes, humidity and vibration.  (Tr. 178-179). These restrictions were more severe than those found by the ALJ and the ALJ rejected them as binding.  (Tr. 290).  The claimant asserts that this action was erroneous.  However, the court notes that the ALJ noted a number of reasons for this finding, including the doctor's statements that the plaintiff slept without pain, was in no acute distress, engaged in light activity and was advised to exercise. (Id.).  The doctor's most recent treatment note from September of 2004 indicated that she was well nourished and in no distress.  (Tr. 182).  Muscle strength was intact in April of 2004.  (Tr. 187).  Moreover, the physician based his opinion on

"cervical and lumbar disc disease" (Tr. 178), and, as discussed below, subsequent MRI testing did not reveal significant objective findings.  Therefore, under these circumstances, the ALJ properly concluded  that this opinion was not binding.

Dr. William Ackerman, another treating physician, identified even more severe physical restrictions than Dr. Chaney, including an inability to lift more than 10 pounds, an inability to stand or walk for more than a total of less than two hours a day, an inability to sit for more than a total of less than two hours a day, and an inability to ever twist, stoop, crouch or climb ladders.[1]  (Tr. 446-447).  When these limitations were presented to the vocational expert, she could not name any jobs which could be performed.  (Tr. 594).  The ALJ rejected this opinion as binding.  (Tr. 290).  Lewis asserts that this action was erroneous.  However, the ALJ noted a number of reasons for this finding, including the doctor's statement that he could see no reason based on the objective evidence why the patient should have lower extremity pain from her 2003 injury, a lumbar MRI scan revealing only minimal disc bulging at L4-L5, and a cervical spine MRI scan in August, 2007 showing no acute pathology.  (Tr. 290, 488, 496).  The ALJ specifically stated that the cervical spine MRI showed "no acute lesion that may be causing this pathology."  (Tr. 496).  Therefore, this opinion was also properly rejected by the ALJ.  Under the

---

[1]Dr. Ackerman also opined that the plaintiff was totally disabled.  (Tr. 457).  Under the federal regulations, this would be an opinion reserved to the Commissioner and not binding on the administration.  20 C.F.R. § 416.927(e)(1).

circumstances of this case, the ALJ could reasonably accept the opinion of Dr. Burns.  (Tr. 289).

The ALJ also dealt properly with the evidence of record relating to the mental condition of Lewis.  Psychologist Robert Fitz examined the plaintiff and diagnosed an adjustment disorder and a pain disorder associated with both psychological factors and a general medical condition.  (Tr. 525).  The examiner opined that the claimant retained a "good" ability to follow work rules, use judgment, function independently, handle detailed and simple instructions, and maintain personal appearance.  (Tr. 527-528).  Lewis would have a "fair" ability to relate to co-workers, deal with the public, interact with supervisors, maintain attention and concentration, handle complex instructions, and relate predictably in social situations.  (Id.).  The plaintiff would have a "poor" ability to handle stress.  (Tr. 527).  These factors were presented to the vocational expert who indicated that the past work could still be performed as well as a significant number of other jobs in the economy.  Thus, this report provides strong support for the administrative decision.

Dr. Chaney opined that Lewis would have a "good" ability in all areas of mental functioning.  (Tr. 180).  The ALJ's opinion is consistent with this opinion as well.

Psychologists Edward Stodola (Tr. 213) and Lea Perritt (Tr. 256) each examined  the record and opined that it did not reveal the existence of a "severe"

mental impairment.  Thus, these opinions also do not suggest the existence of a more severe mental problem than that found by the ALJ.

Psychologist Christopher Catt examined Lewis and diagnosed a pain disorder and an adjustment disorder with depressed mood.  (Tr. 211).  Catt noted "moderate" restrictions of ability to tolerate stress and to maintain attention and concentration to perform simple repetitive tasks.  (Tr. 212).  This opinion suggests greater limitation than that found by the ALJ.  However, the opinion is offset by that of Fitz.  Therefore, substantial evidence supports this portion of the administrative decision.

Lewis argues that the ALJ erred by failing to cite specific reasons for finding that her complaints of disabling pain were not credible.  However, the court notes that the ALJ reported a number of reasons for this finding.  A December, 2005 physical examination at the Wasson Clinic was normal despite complaints of severe low back pain.  (Tr. 288, 405).  A January, 2006 MRI scan of the cervical spine revealed no sign of mass, disc protrusion or nerve root compression. (Tr. 288, 416).  An MRI scan of the lumbar spine showed a mild disc bulge at T11-T12 but no sign of disc protrusion or nerve root compression.  (Tr. 288, 417).  A January, 2006 physical examination by Dr. Ackerman revealed only a slight decrease in cervical spine motion.  (Tr. 288, 473).  Straight leg raising was negative and both gait and balance were normal.  (Id.).  Strength, sensation and reflexes were symmetrical in

13

both the upper and lower extremities.  (Id.).  The ALJ also cited the fact that Dr. Ackerman opined that the 2003 injury was not causing her current pain.  (Tr. 288). The largely negative findings made by Dr. Burns were yet another reason cited by the ALJ in support of his credibility assessment.  (Tr. 289).  Therefore, the court must reject the claimant's argument.

The undersigned concludes that the administrative decision should be affirmed.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 28th day of May, 2010.


**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**